Sarah Welch for the appellants. I'd like to reserve four minutes for rebuttal. In the decision below, the district court entered nationwide preliminary relief that has the practical effect of barring the government from the opportunity to use MPP to secure the southern border. In addition to three threshold problems, that order rested on a flawed view of the merits. MPP has only incidental effects on speech and the effects that plaintiff identifies on the statutory right to counsel and to apply for asylum are inherent in the exercise of the statutory contiguous territory return authority. The last time a challenge to MPP was before the Ninth Circuit. This court affirmed a similar preliminary injunction and the Supreme Court promptly issued a stay indicating its view that the government would likely succeed in defending MPP as lawful. This time around, the court shouldn't force the Supreme Court to intervene again. To reiterate that conclusion, the district courts, excuse me. Calico, can I ask about the relationship between the merits arguments in the Wolf case that you were referencing and the merits arguments here? In what ways are they are different, right? I mean, so we can't just look to the Supreme Court's prior stay and say, well, that has to transfer over. Why then do you think that that is relevant to the current case? Are these claims stronger, weaker than the Wolf merits arguments? Sure, Your Honor. We do think they're weaker than the Wolf merits arguments as sort of a second cut at arguments to challenge MPP, given that the first cut of arguments, the Supreme Court has already rejected. So we take the difference in arguments and we agree there are different arguments. The first, the Wolf arguments focused on the statutory authority behind MPP as well as whether the government was adequately complying with its obligations not to return individuals to places where they would likely be tortured. So we do think it's relevant in that the Supreme Court has already indicated that the government will suffer irreparable harm if it's not permitted to exercise MPP when it chooses to do so, that the balance of authorities tips in favor of the government, even though there was similar evidence in the record at that point about conditions in Mexico, and that the government does have statutory authority to implement MPP despite the new challenges the plaintiffs are raising here that raise conflicts with others. Wolf, can I ask you about that? When you raise it about irreparable harm, it strikes me that the irreparable harm in Wolf was stronger potentially than the irreparable harm here. In Wolf, the government was actively enforcing the Remain in Mexico policy. Can you give us an update on where the government is at this go-around? So currently we're not using MPP in light of the district court's order below. So for the past couple of months since the district court's order issued, we have not been using MPP. Prior to that, MPP was in effect on a limited basis. The government had it as an option to choose to rely on in appropriate cases, but was largely relying on other authorities as more appropriate under given circumstances. So you had it as an option. That means you weren't actually effectuating anybody or placing anybody onto that program. My understanding is that it was in effect, but on a limited basis. I'm sorry, can you say that again? I didn't understand. My understanding is that it was in effect, but on a limited basis. I want to know what that means. Some individuals, but a much lower number than last time. So there were individuals. Do you have a number? I don't have a number, but my understanding is that the number isn't zero. Ten? I don't have a number. A hundred? I'm sorry, I don't have a number. Okay. The last administration said that because it takes two parties to effectuate MPP with Mexico as well, does the administration have any information as to whether Mexico is willing to engage in MPP again as part of this plan? So I don't have a representation on any agreement or negotiations with Mexico beyond what we've already publicly said, which is that the MPP is re-implemented. The conditions are favorable. That was in the January 2021, the January 21st, 2025 announcement. The conditions at the border are now favorable for re-implementation of MPP. Our representation in the Northern District of Texas litigation about the MPP was that MPP would be in effect while that case is being held in abeyance through July. Ms. Welch, during the first President Trump administration, the October 2021 DHS memo explained in relevant part that organizations such that immigration defendants defense here were prevented from conducting know your rights presentations, limited to talking with their clients to one hour and denied confidential meeting space. I at this stage of the litigation, am I correct that you don't dispute the accuracy of those findings? We haven't, we haven't so far submitted contrary evidence. That's correct. So I will note that that the Texas case is currently stayed. It's being held in abeyance while DHS reconsiders that October 29th memorandum and considers whether to withdraw it. So I take your argument at this stage to be that the restrictions on the, on the, on the speech on freedom of speech outlined in the DHS memo are sufficiently tailored to pass strict scrutiny or immediate scrutiny under the first amendment. So our primary argument is that MPP has only incidental effects on speech. MPP is placing individuals in a different country from the people that they would like to speak with. And that's the same sort of incidental effect on speech as a, as an ordinance that prohibits outdoor fires, which has the incidental effect of restricting flag burning. For example, that's the Rumsfeld be fair example. To the extent the court disagrees with that view of MPP, we would say that it is a content neutral, it's best understood as a content neutral speech restriction. Again, it's simply placing people in a different location. And I would also note that my friends on the other side have not made any tailoring arguments whatsoever in their stay opposition. We pointed out the relevant standard and made our arguments and they didn't respond with respect to tailoring. So we think that that in itself is significant and maybe goes to the point that their theory doesn't really have a limiting principle on what is sufficient and what the territory return authority. Well, thank you. I guess there's a number of significant findings in the 2021 DHS memo. And I guess I'd like to know is the current administration planning on making any changes to the re-implementation of remaining at school policy to address the concerns raised in the 2021 DHS memo surrounding the like the policy's limitation on freedom of speech and the right to counsel codified in the INA? So I can tell you that DHS is, that we have attained a stay in the Northern District of Texas litigation on the representation that DHS is reconsidering its position on the litigation and with respect to the October 29th memorandum. I can't tell you the outcome of that process will be and I can't tell you what additional guidance DHS will issue in the future. I will say that we haven't made ripeness arguments before this court, but we did have those arguments below and we may renew them when we have the opportunity to submit our preliminary injunction merits briefs before the court. Council, don't we have a duty to, I haven't determined our own jurisdiction here? That's right, Your Honor, as a component of standing. And so that just goes to the point that they're challenging re-implementation, but we have as yet seen very few individuals subjected to MPP. And as far as I'm aware, my colleagues on the other side haven't identified any specific individuals or any specific issues with the re-implementation of MPP. As I understand that the reinstatement is predicated on President Trump's executive order that began in January of 2025 and then there was an announcement by DHS on its website. So why, whether or not to what extent MPP is going into full effect or not, why isn't that sufficiently ripened for us to review? Well, I guess to put it in another way, why isn't that sufficient to be a final agency action, a final determination of rights and consequences for us to review on either ripeness grounds or final agency action? Sure. So I think our ripeness arguments generally go to the point that it's difficult to make detailed arguments about exactly how re-implementation will work out on the ground when we haven't seen re-implementation with respect to a meaningful number of individuals. I do think that the January 21st, 2025 DHS announcement that finding that conditions on the ground were favorable to re-implementation of MPP and that it would go into effect is hard to understand as a distinct final agency action separate from the announcement of MPP 1.0 in 2019 and the promulgation of MPP 1.0. It's hard to view those as distinct agency actions with separate decision-making processes and separate creation of legal obligations or effects on the ground. Why? Because as I understand it, the intervening event was the Texas litigation and the October 2021 memo from Secretary Mayorkas to rescind the MPP program and that's been stayed by the district court in Texas. So in effect, the rescission order is what's in effect about the program and so the reinstating now would create a new sort of legal consequence and dynamic, right? I don't think that's quite right. We would disagree because the status quo prior to the re-implementation announcement on January 21st was that MPP was in effect and that the attempt to rescind it via the October 29th memoranda was not in effect because the Northern District of Texas had stayed that, the government appealed and then voluntarily dismissed its appeal and acquiesced to that status quo of the rescission of MPP being stayed and no longer in effect. So all the January 21st memo announced, or not memo, but announcement, all of that produced was a finding that MPP could be implemented, that conditions were favorable on the ground and that's hard to conceive of as a distinct decision-making process with distinct legal consequences from the 2019 implementation of MPP 1.0. Could I ask you to walk us through an order under Section 705 of the APA, which under the statutory language is a postponement of agency action, and why that amounts to or has the practical effect of an injunction? Isn't there a distinction between a stay pending merits-based review of an APA claim versus the entry of an injunction in your mind? So certainly not in this case, that's where I would start with my answer. In this case, the District Court understood the request for a stay to be directed toward re-implementation of MPP and I take it that that's an effort to not request an order that explicitly clashes with the Northern District of Texas so that we would have dueling 705 stays. So I think, I take it that that's why it's framed in that way, but because it's directed at conduct rather than at a source of authority, which is the traditional understanding of what a stay would do, removing the source of authority to act, I think this particular action is especially hard to think of as a 705 stay. In general though, a Section 705 stay can frequently have the same practical effect as a preliminary injunction. Standing here today, the government is not able to implement MPP on the ground. That's the same practical effect that a preliminary injunction saying don't re-implement MPP would have had. The District Court also considered the exact same factors that it would have considered if it was deciding whether to issue a preliminary injunction, the same four-factor test. And it would be a tremendous departure from Supreme Court precedent and from this Court's precedence to treat something that produces the same practical effect on the ground, considers the same factors, and just changes the title on the first page. From preliminary injunction to stay under Section 705 to treat that as something that is not appealable and that would remain in effect throughout the rest of this litigation, which has already been going on for five years. I guess let me ask you this, pulling back in any type of case where there's an APA challenge, there's a been a final administrative agency action and someone who's challenging it requests a stay of that of the implementation of that action. And if the stay is entered, then it's necessarily preventing on a temporary basis the administration of that action. Why, if that were the basis, why wouldn't every 705 stay then be injunctive? Like what makes this one different than other administrative stays that may not be equivalent to an injunction? So two responses, one narrower, one broader. The narrower response is that typically a Section 705 stay would be directed at the source of the authority to act. An agency makes a rule and someone asks for a stay of the rule instead of for a stay of implementation or re-implementation of the rule. So something that's directed at the source of authority rather than at the action itself, given that actions are taken by people on the ground. And the broader response is Section 705 stays likely are typically appealable because they the same practical effect as a preliminary injunction. There may be an unusual Section 705 stay that does not have the same practical effect as an injunction. I've tried to think of what that case would be and had a little trouble coming up with exactly what the case would be where a 705 stay would not have the same practical effect as an injunction. But I think, you know, given the breadth and variety of orders that can be appealable as having the same practical effect as an injunction, including something that looked an awful lot like a declaratory judgment in Abbott v. Perez, the denial of a consent decree, parties' efforts to settle a case, it would be surprising if something that, like a Section 705 stay, that has enduring effect throughout litigation and that considers the exact same factors as a preliminary injunction, given that it has the same effect, it would be surprising if that wasn't appealable in the ordinary case. Your motion for stay pending appeal advances an alternative request for us to limit the nationwide scope of the District Court's Section 705 stay. If we were to limit the scope of the stay, say, for example, to the geographic boundaries of the Ninth Circuit, how would the government re-implement, remain in Mexico while steering clear of a geographically limited Section 705 stay? So I think one way to understand geographic limits would be that MPP could only operate with respect to individuals arriving at ports of entry outside that geographic limitation. I think our request to narrow it was to limit it to the plaintiff's clients, and so that could be readily implemented. Anyone who's represented by the plaintiff would not be subject to MPP and would be permitted to remain in the United States during the pendency of their proceedings. And not geographically? I believe our request was to limit it to their clients, but you know, a geographical limitation could be possible as well. But there have been other geographic. I'm just trying to figure out, you know, would the government ask asylum seekers whether they plan to await their immigration proceedings in California, for instance, or would the government exclusively control where asylum seekers' cases would be heard geographically? I think the simplest way to understand it would be based on the location of the port of entry where an individual is being processed. Ms. Walsh, what's the government's main argument for irreparable harm? So we have a couple of arguments. One is that MPP should be on the table as an authority that the government can use to secure the border. The government has to make choices every day about which authorities to exercise with respect to individuals arriving at ports of entry or otherwise, and MPP should be one of the authorities that the government can use. Recent Supreme Court stays have recognized that the inability of the government to put its immigration policies into effect on the ground is a form of irreparable harm and weighs heavily in the balance of equities. I would point the court to the stay in NTPSA with respect to TPS applicants, to the Dovinome stay about a month ago with respect to programmatic parole terminations, and just recently with respect to third country removal. I believe there was a stay issued yesterday with respect to So repeated emphasis by the Supreme Court that the government is facing irreparable harm when it's unable to put its immigration policies into effect on the ground. I just want to follow up briefly on the question posed by Judge Sanchez and your response. The final effects of the 705 stay versus injunction are distinct, right? I mean, because a 705 stay could end in a 706 order, is it, from a court setting aside or vacating the policy. It seems like the government can then go back and try to implement the policy again. An injunction would, by contrast, result in a permanent rule preventing a party, including potentially third parties, from acting under certain policy. Is that correct? I think that's possible. I think it could also depend on the way that the injunction, that a final injunction, a permanent injunction, is framed. If it was against specific provisions of MPP or against a specific operation of a program, then it could leave future action available. But regardless, I don't think that the ultimate relief that's available in a case determines whether the preliminary relief is immediately appealable. You had a question? I did. Well, just to follow up, you know, I've been thinking about the Biden versus Texas Fifth Circuit case because there isn't that many, there's not much authority on these issues. And to follow on Judge Murguia's point, the Fifth Circuit there noted a distinction between APA relief, like vacating an agency action, versus entry of an injunction for purposes of the injunction bar. And here we're not, we don't even have vacates or of an agency actions, just a postponement while the court reviews the merits. So it seems even further removed. I'm wondering if, even if there might be enough to garner appellate review or that this is an focus on whether the injunction bar shift a little bit in view of the fact that this is more of an APA type relief than the entry of an injunction itself. I don't know if that question is making sense. Yes, it is. With respect to 1252-F1. Yes. Yes. So first I would point the court to Alleman Gonzalez's description of the breadth of 1252-F1, which is that it applies to orders that require federal officials to take or refrain from taking actions to enforce, implement, or carry out the covered provisions. And I think it's, it's hard to see how Section 705 stays fall outside that description. My second response would be that 1252-F1 refers not only to orders that are injunctive in nature, but also to orders that otherwise restrain the government from putting into effect the covered provisions. So regardless of whether it's injunctive, we do think it's a distinct question of whether it restrains the government. And we have, I think it's clear on the ground that the government is restrained by the Section 705 stay from putting MPP into effect and exercising its contiguous territory return authority, which it has pursuant to one of the covered statutes. So is it your view, is it the government's view that even some sort of a temporary stay action that wouldn't amount to an injunction would still be covered by the F1 bar, by the injunction bar? Yes. Even if it were not injunctive in nature, it could fall into the or restrain part of the 1252-F1 language, enjoin or restrain. Wouldn't that create this very strange circumstance though? Imagine if, and we don't have to take this case, for example, because you have your position on it, but let's say a court issues a stay, a 705 stay pending APA review, and it's really limited in nature in some kind of way, something that would not engender appellate review, you know, it wouldn't be enough to be injunctive review. But if the government's view is that that order would itself be unauthorized because of the bar, we wouldn't know about it until it got to Supreme Court. That seems a little bit of an odd reading to construe that Congress would have wanted to encompass even those types of restraints as opposed to an entry of an injunction. Tell me why that's wrong in your view. I think we may have a difference. I think I'm struggling first with the premise of the hypothetical that there would be many, if any, 705 stays that would have the effect of restraining the government, but that would not be immediately appealable. Separately, if there were such stays, I think the government would be able to seek mandamus to enforce 1252-F1 in the courts of appeals. And otherwise, I think I would, the government submitted supplemental briefing in Texas v. United States, the 2023 case, on the breadth of 1252-F1 with respect to forms of that are not injunctive in nature, for example, declaratory relief. And that supplemental briefing post-argument may be helpful on these issues in particular. And do you think declaratory relief would also be subject to the bar or not? So the position that the government took in that case was that some declaratory relief would apply only to individuals and would not have the effect, would not have effects that are precluded by 1252-F1. And other forms of declaratory relief would be functionally equivalent to a restraint on the government and would be barred by 1252-F1. But in your view, APA stays under 705 will almost always fall into that category? When they have the effect of enjoining or restraining the government, which will likely be the case in most 705 stays that a plaintiff will have standing to seek because they'll satisfy redressability for that individual or organizational plaintiff. I think that will typically be the case that a section 705 stay will have the effect of enjoining or restraining the government. We've gone beyond your time, but I'll give you a couple minutes for a rebuttal. Thank you, Your Honor. Good afternoon, Your Honors. Alison Myers on behalf of plaintiff. I'm going to be addressing the motion to dismiss while my colleague will address the emergency motion to stay. Can I split the time, please? Okay, thanks. And assuming defendants will be permitted to respond to my arguments on the motion to dismiss, I'd like to reserve a few minutes for rebuttal, three minutes for rebuttal. Okay. Thank you, Your Honor. Defendants' appeal must be dismissed for failure to satisfy the practical effects test established in Carson v. American Brands. First, defendants are required to show that they will suffer serious irreparable consequences absent immediate implementation of MPP 1.0. Defendants have failed to do so for three reasons. First, defendants have submitted no evidence, no declarations, or any other factual support that serious irreparable consequences would occur absent immediate implementation of MPP 1.0. And as this court stated in Sierra Club, the mere inability of the government to enforce its own laws is insufficient to satisfy a demand of irreparable harm. Second, even if the inability to reimplement MPP immediately were sufficient to meet the second prong of Carson, defendants have failed to submit evidence that MPP 1.0 is even capable of being reimplemented because they have shown no evidence that they've obtained consent from Mexico, which the government has previously stated is necessary in order to implement MPP. And third, defendants have stated on the record that they have other enforcement mechanisms that they have been relying on to regulate the border, so they do not need to re-implement MPP 1.0 in order to achieve that interest. This case is like the orders in Alci Valley and Montana Wildlife Federation. In those cases, this court held that orders that had the effect of setting aside an agency action are not subject to immediate appeal unless the orders require the defendants to do something more beyond setting aside the agency action. Here, the order... Does it matter what the agency action is? Because it strikes me that that's a pretty broad statement to just say, well, just because you can't enforce it, there's no serious consequences, but you could have serious... I mean, what if the president were enjoined from going to war? I mean, would you really be in here saying, well, there's not serious consequences? You know, what if the president were enjoined from issuing a tariff that, you know, he felt like he needed for international relations issues or... I mean, isn't that different from a regulation that just sets rates for energy prices or something like that? Well, first, if the president were enjoined, then it would be an injunction subject to immediate appeal, but assuming it was through a stay... Let's say his action was just stayed and not enjoined. Understood. We are not taking the position that there is a per se rule that a Section 705 stay can never be appealed, simply that the Carson factors do apply and it is on the defendants to demonstrate that those three factors are satisfied. Well, I'm with you, but I'm pushing back on your statement that, as I understood your argument here, it was, well, just because it's been... I mean, this is a helpful clarification. You're saying it's not per se, and if it's not per se, then don't we need to look at what is going on here? And it strikes me that the Supreme Court has been pretty clear that the president's ability to effectuate immigration policy, number one, is at the apex of the president's authority, and number two, is there's a serious consequence to not being able to enforce immigration policies. So why wouldn't that satisfy... You're saying, I think, Carson, I was looking at the Eldorado case that I thought laid these out, but I don't understand how that's not a serious consequence to tell the president that he can't utilize an arrow in his quiver to deal with the problem that, you know, rightly or wrongly, he views as a national security interest. I think this court's decision in Sierra Club accurately describes the distinction between merely showing an abstract harm of being unable to enforce the government's policies or laws, or in this case, a president's decision, and the requirement that in order to show irreparable harm, the defendant must demonstrate some concrete harm, something that will occur as a result of the inability to enforce those laws. So, for example, in Maryland v. King, the concrete harm that would have arisen absent the ability to enforce the DNA collection statute would be that law enforcement would be severely impaired from enforcing criminal laws. Here, defendants have not demonstrated any concrete harm. They have not submitted any declarations saying that they absolutely need to implement MPP 1.0, and it hasn't been in effect in nearly three years. Well, counsel, what about the foreign policy implications that the Supreme Court emphasized in Biden v. Texas? You know, it goes both ways. Substantial discretion to an administration chart its own path on foreign policy, and does this stay have the potential of intruding on a president's prerogatives vis-a-vis a partner in the South? So, the Constitution gives Congress the ability to enact immigration laws. The president has discretion over foreign policy. Here, the stay of MPP 1.0 does not intrude on the president's ability to engage in foreign policy because it only affects what the U.S. government does on this side of our border. But, I mean, is that really so? Congress has passed a contiguous territory provision that allows a president to enact a type of policy like this one, assuming it's done lawfully and setting aside claims, and that type of policy involves interactions with a foreign nation. How are we able to know or to assess that a court order preventing the president from even implementing that policy is not going to get in the way of foreign policy discussions or other things related to trying to carry out those policies? So, whereas here Congress has delegated authority to the president, to the executive branch, the executive branch cannot act within that authority in a way that violates other laws, such as is the case here where the MPP 1.0, the implementation of the contiguous return provision, the court below found is likely to violate various statutory and constitutional laws. And on the question of whether the stay will impact foreign policy, again, the government submitted no evidence that this stay will impact foreign policy or interfere with the government's relationship with Mexico, and they had plenty of opportunity to do so. I have a clarifying question about the structure of your claims. Looking at your Second Amendment complaint, I see you bring a First Amendment claim and an APA claim. Is that right? That's correct, Your Honor. And the APA claim appears to assert that the Remain in Mexico policy violates the INA's right to counsel of the asylum seeker's choice. Does your APA claim also include your First Amendment claims? The APA claims and the First Amendment claims are somewhat related in that the scope of the right to counsel under the APA is also protected under the First Amendment. My colleague, Ms. Coleman, is more prepared to provide you with a detailed answer on the substance of our claims. Okay. Oh, so defendants have failed to satisfy the second prong under Carson, but even if they did satisfy that prong, they have also failed to satisfy the third prong, which requires a showing that the order can only be effectively challenged by immediate appeal. The merits of the underlying district court's order can be decided just as effectively under final review by this court, and defendants have provided no rationale for why the order must immediately be challenged. They argue that the third prong is met simply because preliminary relief cannot be appealed after a final judgment. But if that reasoning were true, then every interlocutory order could only be challenged by immediate appeal, and that third Carson prong would be entirely obsolete. Do you want to reserve, or do you have another question? I just, this case was filed in 2020, so the government is making the point that there could be irreparable harm because of how much time it would take to resolve these APA and First Amendment claims. Do you have a sense of what the timing or the time, the expected timeframe might be for the district court to resolve these issues? Um, the motion for, motions for summary judgment will be due in October, and I believe trial is scheduled in January. That said, this court has held before that merely a delay in resolving the litigation is insufficient to satisfy the third prong, so that is not enough to meet the Carson standard. Thank you. Thank you.  Good afternoon, Your Honor. Hannah Coleman on behalf of Plaintiff Immigrant Defenders Law Center. The briefs on the government's stay motion understandably focus on the legal issues that the government stay motion presents, but it's important not to lose sight of what's really at stake here. This is an attempt by defendants to make the rights to seek asylum and to seek counsel rights that were granted by congressional statutes and the First Amendment a hollow hope. Wait, whoa, back up, counsel. That's a broad statement to start out with. There's nothing in the statute that says that. All the statutes, and this goes to your First Amendment claim, the statute says you have to remain in Mexico. This is something that's expressly permitted by the INA. Expressly permitted by the INA. And so why do you say, I mean, that's a broad claim to say that they're targeting and trying to deny them their First Amendment rights. There's nothing in there that speaks about First Amendment rights. So, Your Honor, Plaintiff IMDEF is not challenging the statute itself, unlike the Innovation Law Lab case that you mentioned earlier. The claim here is that the way that defendants implemented MPP 1.0 violated statutory and congressional rights. And if you, excuse me, statutory and constitutional rights. And if you just look at the government's October 29th termination memo, which was mentioned earlier, that memo explains the many different ways that MPP 1.0. That is very different from what you said. You said the government only instituted this to take away their right to counsel. I don't see any evidence in that. Now, that might be an incidental effect. And the 2021 memo might reflect that that's an incidental effect. But that's far different from the argument that you started out with. I just think we need to be careful about casting aspersions on what the government's doing. The government is taking an action that is expressly permitted by the INA. Now, you complain about the incidental effects of that. But I want to know where in the statute it says it's targeting. Where in the statute, or excuse me, I say statute. But where in the re-implementation does it say it's targeting the right to counsel? Your Honor, it's in the way that it was targeting. For example, legal service providers were only provided an hour before the immigration proceedings to meet with clients and prospective clients. Also... Wait, that's not true at all. They could go to Mexico. Are they prohibited from going to Mexico to talk to their clients? They are not prohibited. But for the reasons that we mentioned on our briefing, not only was it incredibly dangerous to go to Mexico, they also didn't have confidential meeting spaces often. So they weren't able to meet with their clients and prospective clients. But Counselor, how is that the fault of the government's enactment? I mean, I don't know the truthfulness or accuracy of that or what's in the record on that specific point. But how is... That's, again, you're talking about an incidental effect from a valid action by the government. Your Honor, we do not believe it's an incidental effect because, first, there are other ways that they could have circumvented these constitutional and statutory violations. But putting that aside, just because the government has the discretion under 1225 B2C to return non-citizens to contiguous territories does not mean that they can violate other provisions of the INA, including the right to counsel and the right to seek asylum. But I don't understand how they're violating the right to counsel. There is no guarantee that the government has to provide a space, even if what you're saying is true, in Mexico for them to meet with your clients. Where is that? Where is that stated, that the government has to provide space in Mexico for you to meet with the clients? That is not stated in the statute. However... Okay. Well, then I think you just answered my question. So let's move on to the First Amendment claim because you're claiming that this violates the First Amendment rights. How is this more than an incidental effect? What is your best case? First of all, can you point to anything in the re-implementation itself that targets speech as opposed to conduct? Yes, Your Honor. It's the same 2019 implementation memo, which, again, restricted legal service providers to one hour and off in time. Read me the language from the regulation or the re-implementation regulation that talks anything about speech. Your Honor, we believe that restricting the ability of legal service providers to one hour before a hearing restricts speech. That's incidental. That's incidental. They're restricting their speech. The policy, however, didn't allow legal service providers to sufficiently meet and consult and advise their clients and prospective clients to prepare for their immigration hearing. And there must be some type of meaningful... Well, doesn't the 2021 DHS, and I don't know if this is what Judge Nelson is or is not aware of, outline in detail how the MPP policy limited the right to counsel in many ways beyond just incidental effects. It may be that it doesn't state exactly what Judge Nelson is asking you, but I guess, because I want to ask another question, but it seems like counsel for the government did not dispute these findings when she was up here, when I asked her previously. Is that what you're talking about? Yes, Your Honor, that's exactly correct. In the termination memo, the defendants themselves, the government, found that there are inherent problems with the program that no amount of resources can sufficiently fix. And the government, in a very detailed 38-page explanation memo, details issues with access to counsel, notice of hearings, other process concerns, the fact that... But counsel, that's true of any action that the government takes. I mean, there's always incidental effects to an implementation, but that's different from saying that it targets the speech. Your Honor, it does target the speech because it restricts legal service providers from providing immigration-related advice to clients and prospective clients. And... Can I ask you about that before you move on? I was trying to understand the First Amendment claim as well. You know, jails will restrict the manner in which lawyers might go see their clients, you know, within jail. And so a lawyer may not have the ability to see their client whenever they want or in certain conditions. And we don't often think of that in a First Amendment context. So what is it about this situation that sort of sounds in a First Amendment claim as opposed to something else? The access to counsel piece of it, I do understand where the claim is coming from. I am having a little more vagueness as to what the First Amendment basis is. Yes, Your Honor. Well, in the detention context, legal service providers would still be able to call their clients in detention. In this context, many clients and prospective clients might have not had access to technology. If they didn't have a phone in Mexico or email in Mexico, they would not be able to contact the legal service providers who then would not be able to advise their clients and prepare them for their asylum hearings. So I understand why Judge Nelson is asking a question because you stated it pretty pointedly that the government specifically targeted. There's no specific language that says the government is specifically targeting. That's correct, correct? In the statute? Yes. Yes, that's correct. All right. So I do understand though that you're talking, it seems like what you're alleging is the effects. I guess there'd be some dispute whether they're incidental or not is that it's prohibiting you in a way that you think would qualitatively be able for you to advise your client or for the advice that you get to have conversations with your client? Yes, that's correct. And just since I know I'm running out of time and I did want to discuss and I know my co-counsel discussed earlier, but it's important to remember that here, the Ninth Circuit instructs that stays must be denied to all petitioners who do not meet the applicable irreparable harm threshold regardless of their showing on the other state factors. So this is a necessary requirement. And here, as my co-counsel mentioned, the government has not shown any irreparable injury with the stay at the district court level. I know you're out of time, but I'm going to give you more time because I have some questions here. I guess I'll ask you the question that your colleague said you would answer because looking at your second amended complaint and goes to the First Amendment claim and the APA claim, the APA claim appears to assert that the Remain in Mexico policy violates the INA's right to counsel of the asylum seekers choice. Does your APA claim also include your First Amendment claim? Because it looks like you are asserting that Remain in Mexico violates the APA for both statutory and constitutional reasons. So I'm just trying to figure out that or is your APA claim and First Amendment claim separate for one another? Can you help me with that? Yes, they are distinct claims. So the APA claim for the right to access counsel is under specific INA statutory provisions, whereas the First Amendment claim is a constitutional claim. And we bring First Amendment claims on behalf of both MDEF and the other organizational plaintiff, as well as on behalf of the individual plaintiffs. And so what is your best set of cases to argue that a policy like Remain in Mexico violates MDEF's First Amendment rights? Yes, Your Honor, if you would just hold on one minute. These are all outlined in the district court's order. So, Your Honor, in the district court's order on page 21, the court lists numerous cases discussing how. Yeah, what's your what, in your view, is the best one? Because, you know, trying to see what similarities you would draw on on those cases that apply to this one. Yes, Your Honor. Reed v. The Town of Gilbert instructs that content-based laws, those that target speech based on its communicative content, are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. Here, we would argue that the implementation of MPP was a content-based law, as I mentioned before, because it restricts legal service providers' ability to provide immigration-related advice to clients and prospective clients. So, let me ask you, just a whole controversy regarding national injunctions. So, I'm trying to figure out if we get to this stage, and I don't know. The briefing and your declaration seem to consistently describe MDEF's mission, excuse me, as centered around serving asylum seekers in the California region. If that's true, would a Section 705 stay limited to the Ninth Circuit provide your organization with complete relief at this juncture? No, Your Honor, it would not. And there's three separate reasons why. First, a stay limited to the Ninth Circuit or the Central District of California, which the government has previously argued for, would not remedy MDEF's ability to communicate and meet with potential clients who would be located outside of the circuit. They would be located anywhere along the U.S.-Mexico border. And this relates to the second point, which is that a geographically limited stay would allow defendants to circumvent the stay by moving asylum seekers out of, let's say, California and changing the venue of their MPP proceedings to elsewhere along the U.S. and Mexico border. And then third- Have they done that? Who you say would allow it? Sorry to continue on this, but they haven't done that. There's nothing that, that would require separate action, wouldn't it? Or could they just unilaterally do that? Yeah, Your Honor, there was evidence in the original MPP 1.0 in 2019 that this did happen. And that was cited in the district court briefing. That what happened? That the government would move MPP 1.0 respondents from one state to another. But if this was stayed within the Ninth Circuit, that would mean no, that the putative class members would not be subject to MPP and they would be allowed to have access to counsel? Or what would be the effect of a stay within the circuit? Well, first, Your Honor, as my colleague mentioned, Section 705 stays are typically granted on a nationwide basis, which makes sense given that the statute authorized a court to postpone the effective date of agency action. Can you just tell me what the- I know you're resisting a circuit scope, but I want to understand the implications of what that might look like. Well, the implications are that MDEF would still have clients and prospective clients that might've entered originally through, let's say San Ysidro Port of Entry and then would have come to the Los Angeles. However, if a stay is limited just to the Ninth Circuit, it's very possible that these prospective clients would be moved to other areas along the border and then would not be subject to the stay if the stay was only in the Ninth Circuit. And therefore, that would be in violation of the stay. Let me ask you, what is your understanding as to why the Biden administration moved unopposed to dismiss the appeal of Judge Kazmarek's Section 705 stay in the Fifth Circuit? Well, in that decision, the court noted all of the differences between Section 705 stays and injunctions. I might be misunderstanding your question. Well, I'm just trying to figure out, I mean, do you know why the Biden administration moved unopposed to dismiss the appeal that was of Judge Kazmarek's 705 stay in the Fifth Circuit? I was just curious, was it because both parties knew and understood that Mexico was not accepting new MPP asylum seekers anymore, and therefore the program would not continue even if it was ordered by the United States or by a court that it had to? Yes, Your Honor, in the record in that case, the government did mention that Mexico had not consented and therefore they were not able to restart the implementation of MPP. That's correct. And my last question is, did MDEF participate in the Know Your Rights presentations as well? Yes, Your Honor, they participated, but they were restricted. So they were oftentimes unable to do these Know Your Rights presentations, which they often give because of these restrictions. And where is that in the record? That's in our second amended complaint. And I believe it's also in the declarations by MDEF counsel in the district court proceeding. And that is in support of the First Amendment claim that MPP would make it more difficult to present Know Your Rights across the border? Is that the basis of that? Yes, Your Honor, both the First Amendment claim and the APA Right to Counsel claim. And Right to Counsel, okay. Thank you very much. Thank you, Your Honors. Ms. Welch. Thank you, Your Honor. Just a couple of quick points. First, with respect to the motion to dismiss on a showing of serious or perhaps irreparable harm, as Carson puts it. My friend on the other side referred to the other authorities that we have so far been using to secure the border. I would just point out that the situation at the border is dynamic, and the set of authorities that the government has to resort to is likewise dynamic. There's substantial litigation about many border initiatives. And so the set of authorities that the government has on a given day is constantly changing. So it would be, in view of that, a serious and irreparable harm to the government to not have MPP on the table as one of the authorities that it can choose from. With respect to the need for an immediate appeal, I would emphasize that preliminary relief isn't appealable after a final judgment. The court has not had difficulty concluding with respect to temporary restraining orders, for example, that those can't be appealed after a final judgment effectively, because the time in which they're in effect can't be recouped after final judgment. And with respect to the timing of this litigation, as you pointed out, Judge Sanchez, it's been ongoing for about five years. Dispositive motions are due in December. And previously, it took from January 2022 until March 2023 to resolve the last round of dispositive motions. So I think it's safe to say that we're nowhere near the end of this litigation. In the district court, let alone on appeal. With respect to the stay motion, beginning with the First Amendment argument, I still haven't heard any limiting principle from opposing counsel on what the government can and cannot do with respect to the First Amendment. And I still haven't heard any argument with respect to tailoring on a similar note. Let me ask you, if we grant stay or deny stay pending appeal here, is your expectation that we should then set this matter for expedited appeal on the merits of the 705 stay? I mean, it seems like that would be the, I think, the normal procedure for a preliminary injunction. But I wanted to ask because I wonder if you would press any new arguments or have any new information, or if an appeal of the merits of the 705 stay would largely be a rehash of the arguments we're reviewing today. We would appreciate the opportunity to submit separate briefing subject to the larger page limits of an ordinary appeal of that sort of grant of preliminary relief. On an expedited basis? We would be happy to do that on an expedited basis. May I? Anything else for Ms. Welch? No, Your Honor. We'd ask you to deny the motion to dismiss and grant the stay. Thank you. Ms. Welch, did you have a minute? I'll quickly address the defendant's arguments in response to the motion to dismiss. First, on the issue of whether they have satisfied the third prong that the order cannot effectively be challenged other than by immediate appeal. The government still has not said where in the merits this order cannot be properly reviewed after final judgment. In Alsea Valley, this court denied or dismissed an appeal simply on the third prong, where the appellant was unable to say anything in the merits that could not be reviewed after final judgment. That applies here, and that alone requires dismissal of appeal. Second, on the government's argument on the serious irreparable consequences. As this court knows, the government itself issued a termination memo emphasizing the problems inherent in MPP 1.0, that they violate constitutional rights. And in light of the dangers in Mexico for clients and counsel and other ethical concerns, the government does not have an interest in implementing a law that it itself has said is unlawful and cannot be fixed. I think I'm out of time. Thank you. Thank you. All right. Thank you very much. I know this was done on a very quick turnaround. So I appreciate your oral arguments, Ms. Myers, Ms. Coleman, Ms. Welch. Thank you very much. The case of Immigrant Defenders Law Center versus Kristi Noem, Secretary of Department of Homeland Security, is submitted. We're adjourned. Thank you.
judges: MURGUIA, NELSON, SANCHEZ